**UNITED STATES v. GENERAL MOTORS CORPORATION et al.**

**Cr. No. 1039.**

District Court, N. D. Indiana, South Bend Division.

Feb. 16, 1939.

Holmes Baldridge and Edmond J. Ford, Sp. Assts. to Atty. Gen., Victor O. Waters, Sp. Atty., Dept. of Justice, of Washington, D. C., Thurman Arnold, Asst. Atty. Gen., Wendell Berge, Sp. Asst. to Atty. Gen., and James R. Fleming, U. S. Atty., of Fort Wayne, Ind., for the United States.

Yeagley & Yeagley, of South Bend, Ind., Pope & Ballard, of Chicago, Ill., and John Thomas Smith and Henry M. Hogan, both of New York City, for defendants.

SLICK, Judge.

At the February Term, 1938, of the South Bend Division of the Northern District of Indiana, the Grand Jury returned an indictment against General Motors Corporation, General Motors Sales Corporation, General Motors Acceptance Corporation, General Motors Acceptance Corporation of Indiana, Incorporated, E. W. Berger, and eighteen other individual defendants.

To this indictment the defendants have addressed a demurrer which admits all allegations well pleaded, not including conclusions. The demurrer attacks the indictment on two general theories: First, that it does not charge an offense under the statute, and, second, that it is bad for several technical reasons, namely, duplicity, uncertainty, prejudicial surplusage, etc.

## As to the Objection that the Indictment Does Not Charge an Offense.

This objection goes to the substance of the matter and, of course, for the purposes of the demurrer, admits all the acts charged. In other words, defendants' position is as follows, to-wit: admitting that we have done everything charged against us, nevertheless, we are not guilty of any violation of the criminal law. The indictment is drawn under Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, which reads in part as follows: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is hereby declared to be illegal. * * * Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a misdemeanor."

The challenged indictment is for conspiracy to violate the above quoted statute, and is in 72 paragraphs. It would serve no useful purpose to recite them here. The first 33 paragraphs serve to furnish a background, a history so to speak, of the general automobile business in the several states of the United States. This includes the manufacture, transportation, sale, and, in most instances, the financing of such sales. Paragraphs 34 and 72, following the general language of the statute, charge a conspiracy in restraint of said automobile trade, more specifically in reference to commerce among the several states in Cadillac, LaSalle, Buick, Oldsmobile, Pontiac and Chevrolet automobiles.

Paragraph 35 charges that it was the purpose of defendants and an object of the conspiracy charged to control as far as possible to the exclusion of all others, the business of financing the trade and commerce in said above enumerated automobiles and in the used automobiles of any other make handled by General Motors dealers.

Paragraphs 36 to 67, inc., state at considerable length the terms of the conspiracy charged. These terms as charged are in part that defendants have arranged and agreed among themselves to require General Motors dealers to agree to deal with General Motors Acceptance Corporation, a finance company, to the exclusion of all other finance companies and to make all dealer contracts for one year only, reserving the right to cancel without cause; to threaten and intimidate dealers, cancel contracts of recalcitrant dealers and refuse and fail to furnish, transport, and deliver cars to them, and to examine their books and records; to disclose and report information; to procure information from servants and employees of dealers, and to prefer in many ways those dealers who finance through General Motors Acceptance Corporation, and to penalize and discriminate against those dealers who do not.

Defendants argue that their conduct as outlined in the indictment is perfectly lawful, in fact, commendable, because it is disclosed as a "cooperative effort among complementary affiliated units to further the integrated enterprise in which they are engaged"; that their alleged conduct is a legitimate effort on their part to advance their business in a highly

competitive market, and to secure for themselves as much of that business as possible.

Learned counsel on both sides agree that if commerce is restrained unreasonably, no form of business organization, however ingenious, will remove such acts from the penalty of the statute. What then becomes of the argument that it clearly appears that "defendants' conduct is lawful as a cooperative effort among complementary affiliated units to further the integrated enterprise in which they are engaged"? Suppose that their complementary affiliated units are engaged in an integrated enterprise. If they so conduct themselves as to conspire to restrain trade and commerce among the several states, they come within the inhibitions of the statute. As was said in Appalachian Coals, Inc. v. United States, 288 U.S. 344, 53 S.Ct. 471, 77 L. Ed. 825, "the anti-trust act aims at substance."

The court is not interested in the corporate form of defendants or in their legitimate efforts to extend their business of manufacturing, selling and financing sales of automobiles, so long as they do not unreasonably restrain commerce or enter into a conspiracy to do so. Whenever this is done the conspirators are guilty of violating the Sherman Anti-Trust Act quoted above, and if it is not done, that is if they do not conspire to restrain trade and commerce unreasonably, they are not guilty, no matter what their corporate legal entity.

■ The indictment in Paragraph 34 makes the specific and positive charge that defendants have heretofore, and within the statutory limitations, engaged in a conspiracy in restraint of trade and commerce among the several states in Cadillac, LaSalle, Buick, Oldsmobile, Pontiac and Chevrolet automobiles, and that they conspired to do all acts and things and use all means necessary to effectuate such restraint, and in numerous paragraphs following the means used and acts and things done are recited.

Defendants in their reply brief, page 6, assert that the conduct with which they stand charged is innocent because such conduct does not unreasonably restrain the free flow of General Motors automobiles in commerce. This then becomes a fact question and this court cannot pass upon that question on demurrer. This is preeminently a question requiring the introduction of evidence to establish.

The Government in its indictment charges that the conduct of defendants has and does interfere with and restrain the free flow of General Motors automobiles in commerce. The defendants deny this.

### Technical Objections.

■ Decisions upholding technical objections to an indictment are the exception, not the general rule, and many recent decisions in the Federal Courts favor a liberal rather than a strict construction of indictments. Jelke v. United States, 7 Cir., 255 F. 264.

■ An indictment is sufficient generally if it follows the statute, except where such procedure would not freely inform defendants of the nature of the accusations they are called upon to meet and defend against. It would seem from the very complete disclosure of the charges against defendants contained in the indictment, that they and each of them are fully informed of the nature of the charges intended to be made and the terms of the conspiracy charged.

### Duplicity.

■ The indictment charges certain individual defendants with conspiring with the other defendants, including corporations in which they are officers. The fact that they are described as officers of the corporations does not mean that their conduct as such officers is complained of, but rather they are charged as individuals, together with the corporations, with violations of the Sherman Anti-Trust Act. This does not render the indictment duplicitous.

### Prejudicial Surplusage.

■ This is an unusual objection to the validity or sufficiency of an indictment. If the allegations complained of are surplusage they may be eliminated at the trial, and the Government would not be required to introduce evidence to prove them. The court at the trial can very easily protect defendants' rights by directing the United States Attorney not to read that portion of the indictment, if indeed it should be desirable to read the whole indictment, which is quite lengthy, to the jury, and the court can and will protect defendants from any prejudice growing out of such charges. Defendants are to be tried on evidence, not charges, and the court should instruct the jury that the fact that certain charges are made in an

356

indictment, indeed the fact that an indictment has been returned, is not to be considered as any evidence whatsoever of the guilt of any of the defendants.

I am persuaded that the prejudice feared by defendants on account of the allegations concerning Ford and Chrysler is not well founded and that defendants can have a fair and impartial trial even though it may be held that the allegations in question are surplusage, which I do not decide at this time.

Propriety of Criminal Proceedings.

■ Defendants argue earnestly that charges of this nature have never heretofore been held to be criminal, and for this reason the demurrer should be sustained. This is likewise a very unusual objection to the sufficiency of an indictment. Defendants urge that to sustain the indictment will compel a long, expensive, and burdensome trial before the correctness of the court's ruling can be challenged in the Court of Appeals, and therefore, the sensible and righteous thing to do, if this court has a reasonable doubt as to the sufficiency of the indictment, is to sustain the demurrer and let that ruling be reviewed.

The trouble with this argument is First —this court does not entertain a reasonable doubt as to the sufficiency of the indictment, and Second—this court cannot legislate in reference to criminal procedure, but must assume full responsibility to pass upon the demurrer. If defendants are not guilty of a criminal offense, they will be so found. If they are guilty, and the jury so finds, they can still have a review of the correctness of this ruling. It would be a very convenient procedure if the District Court could, before trial on the merits, certify a challenged indictment to the Circuit Court of Appeals, and that court could pass the responsibility on to the Supreme Court, thus settling in advance of trial the validity of an indictment. This is not done in cases carrying a much heavier penalty and where litigants are less able than these defendants to stand the expense of appellate litigation. The suggestion is without merit and is contrary to correct criminal procedure.

■ The indictment states a public offense, is well drawn, and, although quite long, clearly indicates to defendants the offense with which they are charged.

The demurrer is overruled and each defendant is separately and severally granted an exception to this ruling.