UNITED STATES *v.* WISE.

No. 488.   Argued April 16, 1962.—Decided June 25, 1962.

*Robert L. Wright* argued the cause for the United States.   With him on the briefs were *Solicitor General Cox, Assistant Attorney General Loevinger, Daniel M. Friedman* and *Richard A. Solomon.*

*John T. Chadwell* argued the cause for appellee. With him on the briefs were *Richard W. McLaren, James A. Rahl, James E. Hastings, Martin J. Purcell* and *John H. Lashly.*

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

A grand jury returned an indictment charging the National Dairy Products Corporation with engaging "in a combination and conspiracy to eliminate price competition in the sale of milk in the Greater Kansas City market in unreasonable restraint of . . . trade and commerce, in violation of Section 1" of the Sherman Act, 15 U. S. C. § 1. Two counts incorporated by reference the alleged illegal acts of the corporation and named the appellee as codefendant. In a bill of particulars the Government charged that the appellee had "been acting solely in his capacity as an officer, director, or agent who authorized, ordered, or did some of the acts" constituting the violation. The appellee moved for a dismissal on the ground that the indictment, as particularized by the bill, failed to charge a crime. According to appellee, the Sherman Act does not apply to corporate officers acting in a representative capacity; he contends that the statute exclusively applicable to these officers is § 14 of the Clayton Act, 15 U. S. C. § 24. Over the Government's opposition the dismissal was ordered by the district judge. 196 F. Supp. 155. An appeal was perfected pursuant to 18 U. S. C. § 3731, and we noted probable jurisdiction. 368 U. S. 945.

Although the Sherman Act has been in existence for over 70 years and although corporate officers have been indicted under that Act for almost as long, see, *e. g., United States* v. *Greenhut,* 50 F. 469 (D. C. D. Mass. 1892); *United States* v. *Patterson,* 55 F. 605 (D. C. D.

Mass. 1893),[1] this question is one of first impression for this Court. The impetus for raising this issue at such a late date comes from the fact that in 1955 the Congress raised the penalty provision in the Sherman Act from $5,000 to $50,000 without making a corresponding increase in the $5,000 penalty found in the Clayton Act.

Section 1 of the Sherman Act imposes criminal sanctions upon "every person" who violates that provision, 15 U. S. C. § 1.[2] The Government contends that a corporate officer is obviously a "person" within the Act. The appellee, however, distinguishes between a corporate officer who represents his corporation and one who acts on his own account. In the latter case the appellee agrees that the Sherman Act applies. But, when the officer is acting solely for his corporation, the appellee contends that he is no longer a "person" within the Act. The rationale for this distinction is that the activities of an officer, however illegal and culpable, are chargeable to the corporation as the principal but not to the individual who perpetrates them.

No substantial support for such an artificial interpretation of a seemingly clear statute is provided by the legislative history. The most that can be said for the appellee's position is that the Reagan Bill, an unsuccessful competitor of the Sherman Bill, specifically included corporate

[1] In the Government's brief the Solicitor General cites 40 cases in which corporate officers were indicted under the Sherman Act between 1890 and 1914. Brief for Appellant, pp. 69–72.

[2] "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . . . Every person who shall make any contract or engage in any combination or conspiracy declared . . . to be illegal shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

officers in its penal section while the Sherman Bill had no penal section at one time. The penal provision of the Reagan Bill was offered as an amendment to the Sherman Bill, and the Senate Committee on the Judiciary then redrafted and resubmitted a bill in the form which became the Sherman Act. 21 Cong. Rec. 2731, 3152. That Act outlawed certain acts by "persons," and there is nothing to indicate that the Congress intended to restrict the meaning as applied to corporate officers. See *Trailmobile Co.* v. *Whirls,* 331 U. S. 40, 61.

The appellee points to § 8 of the Sherman Act, 15 U. S. C. § 7, which defines "person" "to include corporations and associations." He argues that, since corporations are included within the term, individual corporate officers are thereby excluded. This is a *non sequitur.* The mere fact that the term is given a broad construction does not alter its basic meaning, and no such inference can be drawn from the express inclusion of corporations as "persons." The reason for this inclusion is readily understandable. The doctrine of corporate criminal responsibility for the acts of the officers was not well established in 1890. See *New York Central & H. R. R. Co.* v. *United States,* 212 U. S. 481. When a criminal statute proscribed conduct by "persons," corporate defendants contended that only natural persons were included. *United States* v. *Amedy,* 11 Wheat. 392. The same issue raised in other cases was not always resolved by a unanimous Court. *Beaston* v. *Farmers' Bank of Delaware,* 12 Pet. 102. Cf. *United States* v. *Shirey,* 359 U. S. 255. The dissent by Mr. Justice Story in the *Beaston* case would be sufficient reason for a careful draftsman to avoid the whole problem of a provision such as § 8. Further reason for caution lay in the language found in cases then recent, *Sinking-Fund Cases,* 99 U. S. 700, 718–719, and *Canada Southern R. Co.* v. *Gebhard,* 109 U. S. 527, 542 (dissenting opinion), which distinguished between per-

sons and corporations when considering the application of the Fourteenth Amendment's protection to "persons." See *Philadelphia Fire Assn.* v. *New York,* 119 U. S. 110, 120 (dissenting opinion). Therefore, we attribute no significance to the specific inclusion of corporations in the definition of "persons" in determining whether a corporate officer is within the term.

This Court was faced with the same problem in *United States* v. *Dotterweich,* 320 U. S. 277, involving the construction of the Federal Food, Drug, and Cosmetic Act, 21 U. S. C. §§ 301–392. An earlier version of the Act stated that the acts of a corporate officer would be chargeable both to him and to the corporation. In a 1938 revision the statute made any "person" responsible and specifically included corporations within that term. 52 Stat. 1040. The Court of Appeals reversed the conviction of a corporate officer on the ground that only a corporation was a "person" within the Act. This Court reversed the Court of Appeals, rejecting substantially the same argument that is advanced by the appellee in this case. The reason for the rejection is equally applicable to the case at bar. No intent to exculpate a corporate officer who violates the law is to be imputed to Congress without clear compulsion; else the fines established by the Sherman Act to deter crime become mere license fees for illegitimate corporate business operations. Following *Dotterweich,* we construe § 1 of the Sherman Act in its common-sense meaning to apply to all officers who have a responsible share in the proscribed transaction. Cf. *Carolene Products Co.* v. *United States,* 323 U. S. 18, 21.

This construction is supported by the decisions of the lower federal courts which considered the problem of whether corporate officers were "persons" within the Sherman Act in the interim before the passage of the Clayton Act. The most significant case is *United States* v. *MacAndrews & Forbes Co.,* 149 F. 823 (C. C. S. D. N. Y.

1906), in which the Court considered the joint indictment of a corporation and some of its officers for violations of the Sherman Act. The defendants demurred to the joinder, the corporation pleading that only the human agents could be held responsible for the misdemeanor while the officers pleaded that only the corporation was responsible. The Court refused to hold as a matter of law that either proposition was correct because responsibility was, in each case, a matter of fact. The Court noted that the officers may or may not be convicted, depending upon whether they were personally responsible for the crime.[3]

In *United States* v. *Winslow,* 195 F. 578 (D. C. D. Mass. 1912), the same contention by corporate officers was given short disposition:

> "The indictment, however, expressly charges them [the corporate officers] as actors, and two fundamental principles are thoroughly settled. One is that neither in the civil nor the criminal law can an officer protect himself behind a corporation where he is the actual, present, and efficient actor; and the second is that all parties active in promoting a misdemeanor, whether agents or not, are principals." 195 F., at 581.

---

[3] "It is not without significance that offenses as serious, in congressional opinion, as those created by this statute are made misdemeanors. When the statute declares that certain acts notoriously to be accomplished under modern business conditions only through corporate instrumentality shall be misdemanors [*sic*], and further declares that the word 'person' as used therein shall be deemed to include corporations, such statute seems to me clearly passed in contemplation of the elementary principle that in respect of a misdemeanor all those who personally aid or abet in its commission are indictable as principals. . . . I am compelled to the conclusion that, under this statute, if the officer or agent of a corporation charged with fault be also charged with personal participation, direction, or activity therein, both may be so charged in the same indictment." 149 F., at 832.

We have found no case between 1890 and 1914 in which a corporate officer successfully secured the dismissal of an indictment or the reversal of a conviction on the ground that he was not a "person" within the Sherman Act when he acted solely as a representative of the corporation.

Unless subsequent statutes have repealed or amended this aspect of the Sherman Act, our inquiry is at an end.

The appellee seeks succor in the subsequent legislative history accompanying attempts to amend the Sherman Act between 1890 and 1914. He particularly relies upon H. R. 10539, 56th Cong., 1st Sess. (1900). This bill would have expressly included corporate officers and agents in the definition of "persons" found in § 8. The report accompanying that bill stated that the existing law did not subject agents, officers, and attorneys to penalties. H. R. Rep. No. 1506, 56th Cong., 1st Sess. However, statutes are construed by the courts with reference to the circumstances existing at the time of the passage. The interpretation placed upon an existing statute by a subsequent group of Congressmen who are promoting legislation and who are unsuccessful has no persuasive significance here. *United States* v. *Price,* 361 U. S. 304, 313; *United States* v. *Turley,* 352 U. S. 407, 415, n. 14; *Fogarty* v. *United States,* 340 U. S. 8, 13–14; *Wong Yang Sung* v. *McGrath,* 339 U. S. 33, 47; *United States* v. *United Mine Workers,* 330 U. S. 258, 281–282; *Gemsco, Inc.,* v. *Walling,* 324 U. S. 244, 265. Logically, several equally tenable inferences could be drawn from the failure of the Congress to adopt an amendment in the light of the interpretation placed upon the existing law by some of its members, including the inference that the existing legislation already incorporated the offered change.

In 1914 the Congress passed "An Act To supplement existing laws against unlawful restraints and monopolies,

and for other purposes," commonly called the Clayton Act. Section 14 of that Act provided:

"That whenever a corporation shall violate any of the penal provisions of the antitrust laws, such violation shall be deemed to be also that of the individual directors, officers, or agents of such corporation who shall have authorized, ordered, or done any of the acts constituting in whole or in part such violation, and such violation shall be deemed a misdemeanor, and upon conviction therefor of any such director, officer, or agent he shall be punished by a fine of not exceeding $5,000 or by imprisonment for not exceeding one year, or by both, in the discretion of the court." 38 Stat. 736.

The appellee contends that § 14 is an entirely new provision added by Congress to provide for the criminal reponsibility of corporate officers who act in a representative capacity. The Government contends that § 14 is merely supplemental and that appellee's construction results in an implied repeal of part of § 1 of the Sherman Act.[4]

Appellee asserts that § 14 would not literally apply to the officer who acted on his own account because his misconduct would not be attributed to the corporation. From this premise he argues that since § 14 of the Clayton Act applies only to an officer acting in a representative capacity, § 1 of the Sherman Act only applies to an officer acting on his own account.

We do not agree. The reasons for § 14 are sufficiently revealed by the legislative history. The provision origi-

---

[4] Appellee also argues, "[t]he Government in this case has not expressly relied on an aider and abettor theory, but . . . it has sought tacit support from the theory." Brief for Appellee, pp. 62–68. Under the view we take of the case, it is unnecessary to consider the application of the general aider and abettor statute, 18 U. S. C. § 2.

nated in the House, and, after conferences with the Senate, survived substantially intact. The reports provide no assistance, but the debates do. Whether any *supplementary* legislation was necessary was the essence of the debates. As Senator Shields, an opponent, said, "[§ 14] is merely a reenactment of the Sherman law, sections 1, 2, and 3. In other words, it has always been held that the officers of corporations violating the law were punishable under these sections . . . ." 51 Cong. Rec. 14214. See 51 Cong. Rec. 9079, 9080, 9169, 9201, 9202, 9595, 9610, 14225, 15820, 16143. The proponents of the bill agreed that the Sherman Act did cover officers whose conduct constituted the offense (without distinction as to the capacity in which the officer was acting), but were disappointed in the sympathy shown to corporate officers by judges, juries, and prosecutors. Second, the proponents feared that the present Sherman Act did not cover officers who merely authorized or ordered the commission of the offense. These ideas were clearly expressed by Representative Floyd, a House manager:

> "The purpose we had was to make it clear that, when a corporation had been guilty, those officers, agents, and directors of the corporation that either authorized, ordered, or did the thing prohibited should be guilty. Under the existing law, and without that provision of the statute, the person who did the things would undoubtedly be guilty; but in the enforcement of the criminal provisions of the Sherman law, experience has demonstrated that both juries and courts are slow to convict men who have simply done acts authorized or ordered by some officers of the concern higher up, and the words 'authorized' and 'ordered' were introduced to reach the real offenders, the men who caused the things to be done . . . ." 51 Cong. Rec. 9609. See 51 Cong. Rec. 9074, 9185, 9676, 9677, 9678, 9679, 16317.

414

Third, the proponents were fearful that the Sherman Act might not cover the activities of an officer which made a single "link" in the "chain" of events constituting the antitrust violation. Hence, the provision fixing responsibility for an act constituting "in whole or in part" the violations. 51 Cong. Rec. 9679, 16275, 16317.

We examine this legislative history in order to ascertain the intent of Congress as to the ultimate purpose of § 14 of the Clayton Act. *United States* v. *E. I. du Pont de Nemours & Co.*, 353 U. S. 586, 591–592; *Schwegmann Bros.* v. *Calvert Distillers Corp.*, 341 U. S. 384, 390–395; *Federal Trade Comm'n* v. *Morton Salt Co.*, 334 U. S. 37, 43–46, 49; *Corn Products Refining Co.* v. *Federal Trade Comm'n*, 324 U. S. 726, 734–737. How members of the 1914 Congress may have interpreted the 1890 Act is not of weight for the purpose of construing the Sherman Act. *Federal Housing Administration* v. *Darlington, Inc.*, 358 U. S. 84; *Rainwater* v. *United States*, 356 U. S. 590; *Koshkonong* v. *Burton*, 104 U. S. 668; *Ogden* v. *Blackledge*, 2 Cranch 272, 277. See *United States* v. *Stafoff*, 260 U. S. 477; *Penn Mutual Life Ins. Co.* v. *Lederer*, 252 U. S. 523; *Levindale Lead & Zinc Mining Co.* v. *Coleman*, 241 U. S. 432; *Talbot* v. *Seeman*, 1 Cranch 1, 35. But see *Sioux Tribe* v. *United States*, 316 U. S. 317; *Stockdale* v. *Insurance Co.*, 20 Wall. 323, 331 (separate opinion); *United States* v. *Freeman*, 3 How. 556. Cf. *United States* v. *E. I. du Pont de Nemours & Co.*, 353 U. S. 586.

Section 14 was intended to be a reaffirmation of the Sherman Act's basic penal provisions and a mandate to prosecutors to bring all responsible persons to justice. In the light of the congressional purpose revealed on the face of the statute and by the legislative history, this Court cannot construe § 14 as a restriction of § 1 of the Sherman Act. Thus, insofar as § 14 relates to the corporate officer who participates in the Sherman Act violation, whether or not in a representative capacity, no change was either intended or effected.

The cases subsequent to the Clayton Act reveal an understanding in accord with our own. The Government continued to seek indictments of corporate officers under the Sherman Act, not the Clayton Act, and many convictions were obtained. See, *e. g., United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150; *United States* v. *Trenton Potteries Co.,* 273 U. S. 392; *American Tobacco Co.* v. *United States,* 147 F. 2d 93 (C. A. 6th Cir.), affirmed, 328 U. S. 781.

The appellee does not call to our attention any case during this time in which the contention he now makes was successfully urged. He suggests that the dearth of cases on this point reflects the belief on the part of corporate officers that, because of the identical penalties of the Clayton Act, the successful challenge to a Sherman Act indictment would be an academic victory. We cannot even attempt to evaluate the motives of individual defendants in raising or not raising defenses, even if we regarded the matter as being significant, which we do not.

The Government, on the other hand, relies upon *United States* v. *Atlantic Comm'n Co.,* 45 F. Supp. 187 (D. C. E. D. N. C.); *United States* v. *General Motors Corp.,* 26 F. Supp. 353 (D. C. N. D. Ind.), affirmed, 121 F. 2d 376 (C. A. 7th Cir.); and *United States* v. *National Malleable & Steel Castings Co.,* 6 F. 2d 40 (D. C. N. D. Ohio), holding that nothing in § 14 of the Clayton Act altered the existing liability for prosecution of all officers who participate in the violation of the Sherman Act. With this, we agree.

We also agree that there is nothing in the 1955 amendment to the Sherman Act nor in its legislative history to indicate that the Congress intended to restrict the applicability of the increased fine to corporations. See 69 Stat. 282; S. Rep. No. 618, 84th Cong., 1st Sess.; H. R. Rep. No. 70, 84th Cong., 1st Sess.

Based upon the foregoing, we hold that a corporate officer is subject to prosecution under § 1 of the Sherman Act whenever he knowingly participates in effecting the illegal contract, combination, or conspiracy—be he one who authorizes, orders, or helps perpetrate the crime—regardless of whether he is acting in a representative capacity. It follows that the District Court erred when it dismissed the indictment against the appellee. The case is reversed and remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

Mr. Justice Frankfurter took no part in the consideration or decision of this case.

Mr. Justice Harlan, concurring.

I join in the opinion of The Chief Justice with some additional observations, believed warranted by the circumstance that the holding below has since been followed by five District Courts, with only two others to the contrary.[1]

---

[1] The opinion below is reported at 196 F. Supp. 155 (W. D. Mo. 1961). In accord are *United States* v. *A. P. Woodson Co.*, 198 F. Supp. 582 (D. D. C. 1961), appeal pending, No. 1019, O. T. 1961; *United States* v. *Milk Distributors Assn.*, 200 F. Supp. 792 (D. Md. 1961); *United States* v. *American Optical Co.*, 1961 Trade Cases, par. 70,156 (E. D. Wis. 1961), reversed *sub nom. United States* v. *Kniss, post*, p. 719; *United States* v. *General Motors Corp.*, 1962 Trade Cases, par. 70,203 (S. D. Cal. 1962), reversed *sub nom. United States* v. *Staley, post*, p. 719; and *United States* v. *Engelhard-Hanovia, Inc.*, 204 F. Supp. 407 (S. D. N. Y. 1962), appeal pending *sub nom. United States* v. *Brown*, No. 983, O. T. 1961.

In *United States* v. *North American Van Lines, Inc.*, 202 F. Supp. 639 (D. D. C. 1962), the court refused to dismiss an indictment of corporate officers, holding that they were not charged with acting solely in a representative capacity. It went on to say that in any

The language of § 1 of the Sherman Act, providing a penalty for "every person" who engages in a conspiracy or makes a contract in restraint of trade, of course presents a serious obstacle to appellee's contention that he cannot be prosecuted thereunder. I agree with the Court that § 8, defining "person" to include corporations and associations, does not imply the exclusion of natural persons. Moreover, the fiction of corporate entity, operative to protect officers from contract liability, had never been applied as a shield against criminal prosecutions when the Sherman Act was passed. In fact I think there can have been no serious doubt even as early as 1890 that officers could be punished for crimes committed for their corporations. Until well into the nineteenth century the corporation itself could not be convicted; the individuals who acted in its name of course could be. See the anonymous note of Holt, C. J., 12 Mod. 559, Case 935, 88 Eng. Rep. 1518 (K. B. 1701); *Rex* v. *Medley,* 6 Car. & P. 292, 297, 299, 172 Eng. Rep. 1246, 1249–1250 (K. B. 1834); *State* v. *Great Works Milling & Mfg. Co.,* 20 Me. 41, 44 (1841); Ballantine, Corporations (rev. ed. 1946), § 113. However, it was recognized that corporate officers could be convicted for "representative" crimes even after the corporation's immunity was worn away, *Regina* v. *Great North of England R. Co.,* [1846] 9 Q. B. 315, 325–327, 115 Eng. Rep. 1294, 1298; *State* v. *Morris & E. R. Co.,* 23 N. J. L. 360, 369 (1852); *State* v. *Patton,* 26 N. C. 16 (1843), in line with the rule stated in 1 Bishop, Criminal Law (7th ed. 1882), § 892, that an agent might be punished for crimes committed for his principal. Cf. *United*

event the Sherman Act applied to representative acts. We are informed by the parties here that in *United States* v. *Packard-Bell Electronics Corp.,* Cr. No. 30158, S. D. Cal., a motion to dismiss was denied without opinion. The indictment, see 5 CCH Trade Reg. Rep. (1961), par. 45,061, case 1632, charged violations of § 14 as well as of § 1.

*States* v. *Mills*, 7 Pet. 138, 142. A substantial volume of convictions of individuals for corporate crimes had accumulated by 1890.[2] Congress legislated against this background; it used words sufficiently broad that representative crimes fell within their ordinary meaning; and the normal inference would be that Congress intended to punish those responsible for acts which it declared unlawful.

The legislative history discloses no intention on the part of Congress to exempt the representative offenses of corporate officers. The Sherman bill, S. 1, 50th Cong., 1st Sess., was reported to the Senate with criminal penalties expressly extending to corporate officers and agents, but Senator Sherman soon omitted the criminal provisions altogether. 21 Cong. Rec. 1765, 2455. Senator Reagan then offered a substitute bill which, among other things, reinstated the criminal provisions, again expressly naming corporate agents in slightly different language. *Id.*, at 2456. Appellee relies on statements made by Senator Sherman in the debate:

> "Whether this law should extend to mere clerks, as was proposed in the third section [as reported by the Committee], is a matter of grave doubt. . . . To restrain and prevent the illegal tendency of a corporation is the proper duty of a court of equity. To punish the criminal intention of an officer is a much

---

[2] *Moore* v. *State*, 48 Miss. 147 (1873); *Elsberry* v. *State*, 52 Ala. 8, 10 (1875); *Ex parte Schmidt*, 2 Tex. App. 196 (1877); *Cowley* v. *People*, 83 N. Y. 464, 469 (1881); *State* v. *Parsons*, 12 Mo. App. 205 (1882); *City of Wyandotte* v. *Corrigan*, 35 Kan. 21, 26; 10 P. 99, 102 (1886). The only decision found to the contrary is *Commonwealth* v. *Demuth*, 12 S. & R. 389, 392 (Pa. 1825), in which a particular statute was read not to impose a duty on individual officers. That this did not state a general rule even in Pennsylvania was made clear by the Supreme Court of that State in *Commonwealth* v. *Ohio & P. R. Co.*, 1 Grant 329, 350 (1856) (dictum).

more difficult process and might be well left to the future. . . .     These corporations do not care about your criminal statutes aimed at their servants. . . ."
*Id.,* at 2456, 2457, 2569.

However, the issue before the Senate at that time was not whether to exempt corporate officers from criminal prosecution but whether to omit criminal sanctions *entirely.* The objections raised—that the addition of criminal penalties would result in strict construction in favor of legality and would inflict punishment for violations of vague and uncertain provisions—applied as well to persons acting for their own account, admittedly included within the Act as passed, as to those acting for corporations.   Moreover, Senator Sherman was promptly overruled by a vote of 34–12, adopting the Reagan amendment as an amendment to the Sherman bill.   *Id.,* at 2611. A number of additional amendments rendered the bill quite unwieldy, see *id.,* at 2655 (Senator Sherman), and it was submitted to the Committee on the Judiciary for tailoring, *id.,* at 2731.   The bill was redrafted in committee to its approximate present form and passed by a 52-1 vote, *id.,* at 2901, 3145, 3153.

I am not persuaded, as argued by the appellee, that the greater margin of support for the final bill than for the Reagan bill indicates that the criminal liability of corporate officers was narrowed.   Opposition to the Reagan bill was based in part on its specification of unlawful purposes that would render a combination a trust, *id.,* at 2469 (Senator Reagan), 2561 (Senator Teller), which was omitted by the Committee, and in part on the inclusion of any criminal penalties at all, a feature common to the Reagan and the final bills which was accepted at the end in a spirit of compromise, as it was by Senator Sherman himself, *id.,* at 2604, 2655.   No Senator ever suggested, so far as can be found, that criminal penalties should be provided for corporations and for self-employed or "ultra

420

vires" individuals alone. Thirty-four Senators—a majority of the whole body—voted to include, via the Reagan bill, sanctions against officers acting for the corporation. The Committee's reduction of the explicit, but cumbersome, language of the Reagan bill to the simple and on its face equally all-encompassing "every person" appears to have been simply a part of the general streamlining of the bill that took place in the Committee, with no intention of changing substance.

These and the further considerations dealt with in the opinion of THE CHIEF JUSTICE [3] lead to the conclusion that the indictment in this case must be sustained.

[3] I find little support, however, for our conclusion in *United States* v. *MacAndrews & Forbes Co.*, 149 F. 823 (C. C. S. D. N. Y. 1906), or *United States* v. *Winslow*, 195 F. 578 (D. Mass. 1912), despite some of the language in those opinions. Neither case squarely upholds criminal responsibility in a "representative" capacity. Among other things the court in *MacAndrews & Forbes* declared it possible to infer from the indictment that the corporations were "doing one thing and the individuals another at or about the same time, which things were utterly different . . . . It is conceivable that the evidence may show that the individual defendants were not free agents, but acted under a species of corporate coercion, for which they should not be held personally responsible; but it is impossible to arrive at this conclusion on demurrer." 149 F., at 832. In *Winslow*, the indictment charged the officers with controlling the industry "by the device and means of and through and in the names of" certain corporations. 195 F., at 591. Thus all that was held in *MacAndrews & Forbes*, and all that needed to be held in *Winslow*, was that corporate officers are not shielded from criminal responsibility when they act on their own individual account or when they use a sham corporation as a means of furthering their personal ends.

Nor do I find much weight in the decisions since 1914 upholding the applicability of the Sherman Act to representative crimes of corporate officers; while the penalties for violating the two statutes were identical there was little incentive to argue to the contrary. The most that can be said of the decisions since 1890 is that they have suggested no doubt of the applicability of the Sherman Act to corporate officers acting only in a representative capacity.