Jay REIFERT, Plaintiff,

v.

SOUTH CENTRAL WISCONSIN MLS CORPORATION, Realtors Association of South Central Wisconsin, Inc., Robert L. Courter, Susan Mathews, David Stark, Robert Weber, Thomas Bunbury, Maurice W. Hill, Peter Sveum, Marshall Zwygart and David McGrath, Defendants.

No. 04–C–969–S.

United States District Court,
W.D. Wisconsin.

April 12, 2005.

Brady C. Williamson, La Follette, Godfrey & Kahn, S.C., Madison, WI, for Defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Jay Reifert commenced this class action anti-trust action alleging that defendant South Central Wisconsin MLS Corp. ("SCW MLS") unlawfully ties the sale of its services to the purchase of services from its corporate parent, defendant Realtors Association of South Central Wisconsin, Inc. ("Realtors"). Plaintiff also named as defendants the individual directors of SCW MLS (collectively, "individual defendants"). Jurisdiction is based on 28 U.S.C. § 1331. The matter is presently before the Court on the motion of the individual defendants for dismissal for failure to state a claim for which relief can be granted. The following is a summary of the allegations of the complaint.

## ALLEGATIONS

Defendant Realtors is a real estate professionals trade association and the owner of 100% of SCW MLS' stock. It offers numerous services to its members including education courses, referral programs, conventions, publications, lobbying and social functions. As a contractual condition of membership Realtors requires members to join the Wisconsin Association of Realtors and the National Association of

Realtors. Annual fees to join all three associations are $449.

Defendant SCW MLS maintains a data base of homes for sale known as a multiple listing service. It has a monopoly on the service in south central Wisconsin. Nearly all broker represented residential property sold in south central Wisconsin is listed in defendant's MLS. There is no effective commercial substitute for a subscription to defendant's MLS. Approximately 100% of active residential real estate agents in south central Wisconsin use defendant's MLS. SCW MLS bylaws explicitly limit MLS access to real estate licensees belonging to the National Association of Realtors.

Plaintiff is a licensed real estate broker. He sought to purchase and was denied MLS services because he was not a member of the National Association of Realtors. Numerous other real estate professionals are compelled to purchase unwanted NAR services in order to purchase MLS services. Other real estate professionals have been excluded from the market because of the requirement. At all times the individual defendants have been aware of the policy, have known that it is not essential to the operation of the MLS and that the policy artificially inflates sales of trade association services including those of Realtors. The individual defendants, who have the sole power to alter the policy, have met, discussed the policy and have ratified and approved it. Because the policy excludes competitors from the market the individual defendants have realized personal financial gain from the policy continuing in effect.

## MEMORANDUM

Individual defendants assume for purposes of this motion that the allegations of the complaint state an antitrust claim. They argue that even if the arrangement between Realtors and SCW MLS is illegal, they cannot be found liable individually. Plaintiff contends that their position as directors and their ratification of the policy as alleged is sufficient to sustain a claim.

A complaint should be dismissed for failure to state a claim only if it appears beyond a reasonable doubt that the plaintiffs can prove no set of facts in support of the claim which would entitle the plaintiffs to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In order to survive a challenge under Rule 12(b)(6) a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984).

A corporate officer is liable for an antitrust violation if the officer "knowingly participates in effecting the illegal contract, combination or conspiracy—be he the one who authorizes, orders, or helps perpetrate the crime—regardless of whether he is acting in a representative capacity." *United States v. Wise*, 370 U.S. 405, 416, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962). In this case, the allegedly unlawful tying arrangement is allegedly the result of a corporate bylaw. According to the allegations of the complaint the individual defendant directors have sole authority to alter the corporate bylaw and they have instead affirmatively ratified and approved the bylaw and its policy. There is no allegation that any of the individual defendant directors were involved in the initial enactment of the bylaw or adoption of the challenged policy. The legal issue presented by the motion is whether affirmation of an existing unlawful corporate policy is by itself sufficient to sustain antitrust liability.

The allegations of the complaint are sufficient to sustain a claim against the individual defendants. Particularly, accepting the allegation that the tying arrangement

embodied in the corporate bylaws is per se unlawful, the ratification and ongoing approval of the policy is sufficient to state a claim against the directors. *See Id.; Higbie v. Kopy–Kat, Inc.,* 391 F.Supp. 808, 810 (E.D.Pa.1975). If, as alleged in the complaint, the individual defendants were the only persons in a position to adopt or alter the unlawful policy and they affirmatively approved it and refused to alter it, their involvement may be sufficient to sustain personal liability.

The allegations of this complaint are readily distinguishable from facts of the cases relied upon by defendants. *United States v. Brown,* 936 F.2d 1042, 1047–48 (9th Cir.1991) held that mere knowledge of subordinate wrongdoing was insufficient to sustain liability for a corporate officer, though liability could exist if there were authorization of the conduct. This case does not involve acquiescence in subordinate conduct. It involves corporate policy instituted and continued at the director level. It cannot be determined on a motion to dismiss that affirmation of an existing unlawful policy by corporate directors with exclusive power to alter that policy is properly characterized as "purely passive behavior" or whether it rose to "encouraging" or "knowingly participating" in the arrangement. *Id.* at 1048. The allegations support the latter.

*Frantz v. United States Powerlifting Federation,* 836 F.2d 1063, 1064 (7th Cir. 1987) offers no real support for defendants' position. Dismissal in *Frantz* was not based on the degree of involvement of a corporate officer but on the clearly established proposition that a corporation cannot conspire with its officers. *Id. Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co. Ltd.,* 467 F.Supp. 841, 852–3 (N.D.Cal.1979), supports the proposition that individuals who ratify unlawful corporate acts may escape liability if, under all the facts and circumstances it is not clear that the conduct was unlawful per se. For purposes of the present motion defendant has alleged that under the circumstances the bylaw is clearly unlawful per se. Whether examination of all the facts will sustain these allegations cannot be determined on a motion to dismiss.

Finally, defendants contend that admittedly inapplicable statutes limiting liability of non-profit corporation directors should be extended as a matter of policy to these directors of a for profit entity. The Court finds no merit to the argument. Certainly the policy of protecting directors of non-profit corporate directors is based on an entirely different rationale than would apply to a for-profit concern. Furthermore, there are ample allegations that the SWC MLS directors have significant economic interest in the operation and policies of SCW MLS whether or not they are paid for their service on the board.

Plaintiff has alleged sufficient facts to state a claim against the individual defendants. Accordingly,

### ORDER

IT IS ORDERED that the motion of the individual defendants to dismiss is DENIED.