Bascom DOYLE, Petitioner,

v.

FEDERAL TRADE COMMISSION, Respondent.

No. 21714.

United States Court of Appeals
Fifth Circuit.

Jan. 24, 1966.

**382**

Paul C. Warnke, Mark A. Weiss, Washington, D. C., for petitioner.

J. B. Truly, Asst. Gen. Counsel, Gerald J. Thain, Atty., F.T.C., Washington, D. C., James McI. Henderson, Gen. Counsel, for respondent.

Before JONES, Senior Judge,* and GEWIN and BELL, Circuit Judges.

JONES, Senior Judge:

Petitioner here seeks reversal of a Federal Trade Commission cease and desist order insofar as it applies to him in his individual capacity. The order arises out of alleged violations of sec. 2(a) of the Clayton Act, as amended,[1] and concerns price discrimination in the sale of "blackstrap" molasses in Houston, Texas. At the time the alleged discriminatory practices took place, petitioner Doyle was an employee of the Pacific Molasses Company, a wholly-owned subsidiary of a publicly-held corporation. Pacific and its president, James Ferguson in his individual capacity, were also joined in the cease and desist order. The joint petition of Pacific and Ferguson is dealt with in our opinion dated January 24, 1966, Pacific Molasses Co. v. Federal Trade Comm., 5 Cir., 356 F.2d 386. Doyle left the employ of Pacific in 1964; hence the separate petition for review.

At a hearing commencing in Houston, Texas, on May 28, 1962, the Federal Trade Commission examiner found that during the first 9 months of 1955 the Pacific Molasses Company engaged in discriminatory pricing practices in the sale of "blackstrap" molasses. The sales were made from Pacific's Houston terminal to independent truck-distributors. Doyle at this time was sales manager in the Houston area and in this capacity advised the president of the company, Ferguson, on pricing policies. The ultimate decisions on all pricing were made by Ferguson and then effectuated by Doyle. The price concessions granted to favored customers ran from $\frac{1}{4}\cancel{c}$ per gallon to 1$\cancel{c}$ per gallon, the latter being nearly a 10 percent reduction over prices charged to non-favored distributor-customers. It was found by the examiner that "secondary line" competition was injured by these discriminatory practices,

---

* Of the United States Court of Claims, sitting by designation.

1. Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. sec. 13(a), provides in pertinent part that:

"It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, * * * and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them. * * *"

and that the concessions were not made in good faith to meet competition from Pacific's rivals.[2]

On review of the examiner's decision, the Commission in a two-to-one decision, Commissioner Elman dissenting, upheld the examiner's cease and desist order against Pacific and further modified it so as to include both Ferguson and Doyle within its proscription, in their individual capacities. The examiner had concluded that there was no necessity for including these two individuals. They had acted solely as officers and employees of the corporate respondent and since it was not a closely held corporation, there was little chance of evasion of the order by Pacific. We must decide whether the Commission acted properly in including petitioner Doyle within the confines of the cease and desist order.

■ Authority to enforce the provisions of sec. 2(a) of the Clayton Act

through the issuance of cease and desist orders is granted the Federal Trade Commission in sec. 11 of the Act, 15 U.S.C. sec. 21. These orders "are not intended to impose criminal punishment or exact compensatory damages for past acts, but to prevent illegal practices in the future." Federal Trade Commission v. Ruberoid Co., 343 U.S. 470, 473, 72 S.Ct. 800, 803, 96 L.Ed. 1081 (1952). In this important respect the orders of the Commission differ in purpose from the penal provisions of the Sherman Anti-Trust Act.[3] Therefore, whereas many corporate officials have been joined as individual defendants in Sherman Act prosecutions,[4] this has not been the practice in the issuance of cease and desist orders.[5] In the latter area, where future corporate activities are the sole concern of the Commission, individuals have only been included in the orders, in almost all instances,[6] when deemed necessary to prevent evasion. The Supreme Court recog-

2. Section 2(b) of the Clayton Act, as amended, 15 U.S.C. sec. 13(b), provides violators of sec. 2(a) with the following defense for their discriminatory pricing practices:
   " * * * That nothing herein contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price * * * was made in good faith to meet an equally low price of a competitor * * *."

3. "Thus Congress, in this Act, has refrained from imposition of an unconditional duty directly enforceable by the government through civil or criminal proceedings in court, as it has in the Sherman Antitrust Act * * *. It has carefully kept such cases as this out of the courts and has shielded a violator from any penalty until the administrative tribunal hands down a definitive order." Federal Trade Commission v. Ruberoid Co. (Justice Jackson dissenting), supra, at 485, 72 S.Ct. at 809.

4. See United States v. Wise, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962).

5. As was stated by the full five-member Commission in The Lovable Co., CCH Trade Reg.Rep. ¶ 17282 (F.T.C. Dkt. 8620, June 29, 1965):
   "In the case of the applicability of the order to the individual respondents,

we feel that respondents' argument has merit. There is nothing in the record justifying an assumption by the Commission that these individual respondents might in the future violate Section 2(d) *in their individual capacities*. Respondents admit only that the individual respondents formulate, direct and control the policies, acts and practices of respondent corporation. There is no warrant in the record for finding that they do any of these things except in their capacities as officers. To justify naming an officer as an individual there must be something in the record suggesting that he would be likely to engage in these practices in the future *as an individual*. To argue otherwise would be to hold that in every order running against a corporation the officers who control its policies, acts and practices should be named. If acts are done as an officer they are done for the corporate respondent, and the order against the corporation will run against the officer as an officer. That is all that is required in this case on this record." [Emphasis in original.]
   For a thorough discussion of this matter of individual responsibility, see Whiting, Antitrust and the Corporate Executive, 47 Va.L.Rev. 929 (1961).

6. Consumer Sales Corp. v. Federal Trade Commission, 198 F.2d 404 (2d Cir. 1952),

nized this "threat of evasion" test in Federal Trade Commission v. Standard Education Society, 302 U.S. 112, 58 S.Ct. 113, 82 L.Ed. 141 (1937). There it was stated at pages 119–120, 58 S.Ct. at page 117:

Since circumstances, disclosed by the Commission's findings and the testimony, are such that further efforts of these individual respondents to evade orders of the Commission might be anticipated, it was proper for the Commission to include them in its cease and desist order.

The record in this case discloses closely held corporations owned, dominated and managed by these three individual respondents. In this management these three respondents acted with practically the same freedom as though no corporation had existed. So far as corporate action was concerned, these three were the actors. Under the circumstances of this proceeding, the Commission was justified in reaching the conclusion that it was necessary to include * * * [these respondents] in each part of its order if it was to be fully effective in preventing the unfair competitive practices which the Commission had found to exist.

■ Since orders running against a corporation are automatically binding on the officials "responsible for the conduct of its affairs" (Wilson v. United States, 221 U.S. 361, 376, 31 S.Ct. 538, 543, 55 L.Ed. 771 (1911)), and these individuals may be punished by contempt if they prevent compliance by the corporation with the order, there seems to be little reason for including corporate officers as individuals in the orders unless there is a possibility of evasion, as was present in Federal Trade Commission v. Standard Education Society, supra. The Supreme Court made this clear in Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945), a case concerning the issuance of injunctions to prevent further violations of the Sherman Act. As was stated at page 434, 65 S.Ct. at page 396:

Any injunction addressed to a corporate defendant may as various sections of the decree do, include its officers and agents. If the individual defendants are officers or agents they will be comprehended as such by the terms of the injunction. If any of them cease to be such, no reason is apparent why he may not proceed, like other individuals, to prosecute whatever lawful business he chooses free of the restraint of an injunction. On the other hand, if new officers and directors take the places of these defendants, such new agents will automatically come under the terms of the injunction. There is no apparent necessity for including them individually in each paragraph of the decree which is applicable to the corporate defendants whose agreements and cooperation constitute the gravamen of the complaint. That these individuals may have rendered themselves liable to prosecution by virtue of the provisions of § 14 of the Clayton Act is beside the point, since relief in equity is remedial, not penal.

cert. denied, 344 U.S. 912, 73 S.Ct. 335, 97 L.Ed. 703 (1952); Sebrone Co. v. Federal Trade Commission, 135 F.2d 676 (7 Cir. 1943); Goodman v. Federal Trade Commission, 244 F.2d 584 (9 Cir. 1957); Tractor Training Service v. Federal Trade Commission, 227 F.2d 420 (9 Cir. 1955), cert. denied 350 U.S. 1005, 76 S.Ct. 649, 100 L.Ed. 867 (1956); Steelco Stainless Steel, Inc. v. Federal Trade Commission, 187 F.2d 693 (7 Cir. 1951); Surf Sales Co. v. Federal Trade Commission, 259 F.2d 744 (7 Cir. 1958); Pati-Port, Inc. v. Federal Trade Commission, 313 F.2d 103 (4 Cir. 1963); Gelb v. Federal Trade Commission, 144 F.2d 580 (2 Cir. 1944); Coro, Inc. v. Federal Trade Commission, 338 F.2d 149 (1 Cir. 1964), cert. denied 380 U.S. 954, 85 S.Ct. 1088, 13 L.Ed.2d 971 (1965); and Rayex Corp. v. Federal Trade Commission, 317 F.2d 290 (2 Cir. 1963).

This reasoning applies with equal weight to the issuance of cease and desist orders.

There appear to be two notable exceptions to this restrictive application of Federal Trade Commission cease and desist orders to individuals in sham corporations. In Standard Distributors, Inc. v. Federal Trade Commission, 211 F.2d 7, 15 (2 Cir. 1954), a divided court held that the officers in top control of a company, whether a sham corporation *or not*, may be included in a Federal Trade Commission order as individuals. And in Benrus Watch Co., Inc. v. Federal Trade Commission, 352 F.2d 313 (8 Cir. 1965), the court held that officers of the company who "formulate, direct, and control corporate policies and practices" may properly be included in the order as individuals, even though they have since left the employ of the corporate respondent. In neither of these two decisions did the court concern itself with the necessity for a "threat of evasion" prior to including the individuals under the order. However, in both these cases the individuals involved were officers in top control of the corporation; formulating, directing, and controlling corporate policies and practices. Since petitioner Doyle did not serve in such a controlling capacity in Pacific Molasses Company, it is not necessary in reaching a decision in this case to consider these two cases further.

There is no evidence in the record to indicate any possible evasion of this cease and desist order by Pacific, nor did the Commission in its decision refer to any. Pacific is a wholly-owned subsidiary of the United Molasses Co., a publicly-held corporation. Doyle had no stock interest in either company. Admittedly, Doyle played a prominent role in the illegal pricing practices, being in charge of all sales in the Houston area. He advised Ferguson of events in the Houston area and on order from Ferguson, Doyle executed the pricing decisions. In effect, Doyle was faithfully carrying out his responsibilities as sales manager, i. e., to increase Pacific's business in the Houston area.

The Commission based its decision to include Doyle in the order upon the Supreme Court's decision in United States v. Wise, 370 U.S. 405, 82 S.Ct. 1354, 8 L.Ed.2d 590 (1962), where it was held that all corporate officers who knowingly participate in violations of the penal provisions of the Sherman Act—*whether they authorize, order, or help perpetrate the crime*—are subject to criminal prosecution. At page 416, 82 S.Ct. 1354. However, as we stated previously the reasoning behind the criminal sanctions of the Sherman Act is different than that underlying the remedial purposes of Federal Trade Commission orders enforcing compliance with section 2(a) of the Clayton Act.

While there is some merit in the Commission's statement that by not applying the order to Doyle he is free to go to another molasses company and execute the same kind of unlawful orders, the punishing effect of this type of usage of cease and desist orders far outweighs any remedial effects to be gained. In effect, Doyle would need to retain personal anti-trust counsel to advise him prior to his executing any orders given by his superior officers in a new company. In fact Doyle would probably find it very difficult indeed securing employment in the molasses industry with a cease and desist order around his neck in albatross fashion. This order would be a brand for life, with violation of it subjecting petitioner to a fine of $5,000 for each day of disobedience.[7] And to force him to seek employment outside his field of experience, the molasses industry, would be harsh economic punishment indeed. This is particularly so in light of section 2(b) of this same Act where the Congress encourages economic competition.[8]

7. Section 11 of the Clayton Act, 15 U.S.C. sec. 21(*l*).

8. See footnote No. 2.

The cease and desist order of the Federal Trade Commission, insofar as it applies to Bascom Doyle in his individual capacity, is vacated and the complaint against him is dismissed.