# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 10, 2025

Lyle W. Cayce
Clerk

———————

No. 21-60947

———————

TRAFFIC JAM EVENTS, L.L.C., *a limited liability company*; DAVID J. JEANSONNE, II, *individually and as an officer of Traffic Jam Events, L.L.C.*,

*Petitioners*,

*versus*

FEDERAL TRADE COMMISSION,

*Respondent.*

_____

Appeal from the Federal Trade Commission
Agency No. 9395

_____

Before STEWART, DENNIS, and RICHMAN, *Circuit Judges*.

PRISCILLA RICHMAN, *Circuit Judge*:*

In an administrative proceeding, the Federal Trade Commission (FTC) determined that Traffic Jam Events, L.L.C. (Traffic Jam) had distributed deceptive advertisements. The FTC released an order that, among other requirements, banned Traffic Jam and its president, David Jeansonne II, from participating in businesses involving advertising,

_____

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

marketing, promoting, distributing, selling, or leasing motor vehicles. Traffic Jam petitioned for review in this court, alleging that (1) the structure of the FTC and the proceedings against Traffic Jam were unconstitutional, (2) the FTC did not have jurisdiction over Traffic Jam and the advertisements did not violate the FTC Act,[1] (3) Traffic Jam was not subject to the Truth in Lending Act, (4) the FTC's remedy was unconstitutional, and (5) Jeansonne should not be held individually liable. We deny Traffic Jam's petition for review.

## I

Traffic Jam is an advertising company that creates mailers on behalf of automotive dealerships. David Jeansonne II was its president and involved in all aspects of the business. Prior to the current proceedings, Traffic Jam had faced at least three charges by states relating to consumer protection laws and its advertisements, which it settled.

The first set of advertisements at issue relates to mailers that, the FTC alleges, falsely represented that the recipient had won a valuable prize. For example, one such advertisement indicated that the recipient had won $2,500 in cash. If the recipient called or went to the listed website to claim their prize, they were told to visit the dealership to obtain it. However, the reverse side of the mailer stated in small print that the winning code was not the one listed on the mailer but rather a prize code posted on a board at the dealership, making the winning code listed on the mailer meaningless. Some of these mailers also advertised certain financing offers next to images of cars. However, additional information, such as the repayment period and annual percentage rate, was shown in small print or on other pages. In some cases,

---

[1] 15 U.S.C. §§ 41-58.

the fine print indicated the annual percentage rate was higher than the rate advertised in large print.

The second set of advertisements at issue is a set of mailers that the FTC alleges were designed to lure people to car sales events with a false promise of COVID stimulus funds. These mailers appeared to be official government mail. The State of Florida also sued Traffic Jam regarding the COVID mailers. The FTC states that Florida's charge was resolved through a consent order barring Traffic Jam from doing business in Florida.

Evidence shows that numerous consumers complained that they had been deceived by these advertisements. The FTC sued in federal district court for injunctive and other equitable relief, which the FTC argues was warranted because "Traffic Jam's COVID mailers posed an urgent threat to public health." Traffic Jam argued in the district court that the case should instead have been brought as an administrative proceeding and that it had ceased sending the mailers. The district court denied the FTC's motion for equitable relief because the FTC had not shown that the deceptive advertising was ongoing. The FTC then dismissed the district court proceeding and brought the administrative action at issue here.

The administrative complaint charged violations of the FTC Act for the COVID mailers and prize mailers as well as violations of the Truth in Lending Act (TILA) and Regulation Z for disseminating credit advertisements that failed to make the proper disclosures with sufficient clarity. An Administrative Law Judge (ALJ) oversaw discovery. The agency moved for a summary decision, analogous to summary judgment. Traffic Jam did not file a counterstatement of facts, which is designed to indicate the

material facts the opposing party believes create genuine issues for trial.[2] However, it did oppose the motion for summary decision.

In a summary decision, the FTC unanimously determined that Traffic Jam had committed the charged violations and that Jeansonne was individually liable. It then entered a cease-and-desist order which bars Traffic Jam and Jeansonne individually from (1) "participat[ing] in any business which involves, in whole or in part, advertising, marketing, promoting, distributing, offering for sale or lease, or selling or leasing motor vehicles"; (2) making misrepresentations about government financial assistance or any "prize, sweepstakes, lottery, or giveaway"; and (3) making statements about credit offers "without disclosing Clearly and Conspicuously" the terms required by the TILA and Regulation Z. It also required compliance monitoring, reporting, and recordkeeping.

Traffic Jam petitioned for review of the FTC's order, raising Appointments Clause, due process, and Seventh Amendment claims relating to the structure of the FTC and the administrative proceedings against Traffic Jam. We review the FTC's decision de novo.[3]

## II

We first address whether Traffic Jam's constitutional claims are properly before this court.

Traffic Jam failed to raise its Appointments Clause and Seventh Amendment claims in the administrative proceeding. Similarly, although Traffic Jam used the words "due process" in its answer and defense filing during the administrative proceeding, it provided virtually no detail as to

---

[2] 16 C.F.R. § 3.24(a)(2).

[3] *See Impax Lab'ys, Inc. v. FTC*, 994 F.3d 484, 491 (5th Cir. 2021).

what it alleged regarding "due process." These claims were not exhausted before the agency. However, Supreme Court precedent provides that some non-exhausted claims may still be considered by courts.

In *Carr v. Saul*,[4] the Supreme Court held that Social Security claimants who lost before an ALJ could raise an Appointments Clause claim during postadjudication judicial review *even if* the claimants did not exhaust that claim before the agency.[5] In examining whether a court should judicially impose an issue-exhaustion requirement where none exists in the agency's authorizing statutes or its regulations, the Supreme Court considered (1) whether the agency proceedings were adversarial or inquisitorial, in particular "whether claimants bear the responsibility to develop issues for adjudicators' consideration";[6] (2) "that agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise"; and (3) that "this Court has consistently recognized a futility exception to exhaustion requirements."[7] In *Carr*, the claims were "purely constitutional" and the ALJs were not "capable of remedying any defects in their own appointments."[8] The Court concluded: "Taken together, the inquisitorial features of [Social Security Administration (SSA)] ALJ proceedings, the constitutional character of petitioners' claims, and the unavailability of any remedy make clear that 'adversarial development' of the Appointments

---

[4] 593 U.S. 83 (2021).

[5] *Id.* at 85.

[6] *Id.* at 88-89.

[7] *Id.* at 92-93.

[8] *Id.* at 93-94.

Clause issue 'simply [did] not exist' (and could not exist) in petitioners' ALJ proceedings."[9]

With regard to Traffic Jam's Appointments Clause claims, like the SSA in *Carr*, the FTC "has no rule requiring waiver of issues not presented to it."[10]  However, while SSA proceedings are more "inquisitorial rather than adversarial,"[11] the FTC proceedings were likely more adversarial than the SSA proceedings at issue in *Carr*.  Even so, the claims raise structural constitutional issues, and the agency could not have remedied such claims had Traffic Jam raised them in the administrative proceeding.  Traffic Jam's Appointments Clause claims are not forfeited.[12]

Regarding Traffic Jam's Seventh Amendment claim, Traffic Jam first raised that claim in its reply brief.[13]  Although this court has stated that it may consider forfeited issues that are purely legal and otherwise would result in a miscarriage of justice,[14] no miscarriage of justice would result from not addressing the claims here because Traffic Jam argued in the district court that the proceeding should have been brought in an agency adjudication.

---

[9] *Id.* at 95-96 (quoting *Sims v. Apfel*, 530 U.S. 103, 112 (2000) (plurality opinion)).

[10] *See Cotherman v. FTC*, 417 F.2d 587, 594 (5th Cir. 1969).

[11] *Carr*, 593 U.S. at 90 (quoting *Sims*, 530 U.S. at 110-11).

[12] *Cf. Axon Enter., Inc. v. FTC*, 598 U.S. 175, 180 (2023) (permitting plaintiffs to raise challenges to constitutionality of FTC ALJs in district court without first completing administrative proceedings).

[13] *See United States v. Ponce*, 896 F.3d 726, 728 (5th Cir. 2018).

[14] *Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021); *Cotherman*, 417 F.2d at 592 ("Ordinarily an appellate court does not give consideration to issues not raised below . . . (but) there may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." (alterations in original) (quoting *Hormel v. Helvering*, 312 U.S. 552, 556-57 (1941))).

No. 21-60947

Traffic Jam forfeited its Seventh Amendment claim.

## III

## A

We first address whether the removal provisions for both ALJs and the FTC Commissioner violate the Appointments Clause. Traffic Jam argues that the "dual-layer of protection from Presidential removal" that FTC ALJs enjoy is "almost identical" to the protections struck down by the Supreme Court in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*[15] and that the Supreme Court has held that SEC ALJs, who perform similar functions to FTC ALJs, are executive branch officers.[16]

After the conclusion of briefing, this court decided *Community Financial Services Ass'n of America, Ltd. v. Consumer Financial Protection Bureau* (*Community Financial I*),[17] which concluded that "to obtain a remedy, the challenging party must demonstrate not only that the removal restriction violates the Constitution but also that 'the unconstitutional removal provision inflicted harm'"[18] and that "the unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office."[19] This court determined "three requisites for proving harm: (1) a substantiated desire by the President to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to

_____

[15] 561 U.S. 477, 492-98 (2010).

[16] *Lucia v. SEC*, 585 U.S. 237, 248-51 (2018).

[17] 51 F.4th 616 (5th Cir. 2022), *rev'd*, 601 U.S. 416 (2024).

[18] *Id.* at 631 (quoting *Collins v. Yellen*, 594 U.S. 220, 259-60 (2021)).

[19] *Id.* at 631-32 (quoting *Collins*, 594 U.S. at 258 n.23).

remove and the challenged actions taken by the insulated actor."[20]   The Supreme Court reversed our court on other grounds in *Community Financial Services*.[21]   On remand to this court, we noted that "the [Supreme] Court did not address the other issues we decided in the case," and we reinstated the judgment "based on Plaintiffs' alternative arguments," citing specific parts of our court's prior decision.[22]   The harm analysis, applying the three prerequisites, was among the alternative arguments referenced.  Those three prerequisites remain the controlling law in our circuit.

Traffic Jam has failed to argue how the allegedly unconstitutional removal provisions have caused it harm.  It therefore cannot prevail on this claim.[23]

**B**

We assume without deciding that Traffic Jam did not forfeit its due process claim, so we address the merits of that claim.  Traffic Jam argues that the FTC has both investigative and adjudicative functions, a "dual-role" which violates due process when combined with the FTC's "win streak" and "procedural ability to inflict expense" because Traffic Jam was not given the opportunity to rebut the FTC's assertions before a neutral decisionmaker.  It further argues that judicial power is reserved for Article III courts and that some matters, such as "inquiry into the circumstances of the pre-complaint investigation and reasons why a complaint is issued," are

---

[20] *Id.* at 632.

[21] *Consumer Fin. Prot. Bureau v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416 (2024).

[22] *See Cmty. Fin. Servs. Ass'n of Am., Ltd. v. Consumer Fin. Prot. Bureau* (*Cmty. Fin. II*), 104 F.4th 930 (5th Cir. 2024) (per curiam) (citing *Cmty. Fin. I*, 51 F.4th at 626-35), *petition for cert. filed*, 93 U.S.L.W. 3250 (U.S. Mar. 7, 2025) (No. 24-969).

[23] *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

barred under FTC precedent but would have been informative to Traffic Jam's constitutional claims. Finally, it argues that the FTC's "vindictive behavior" is clear in that it first brought a federal lawsuit against Traffic Jam, "lost," and then brought the same complaint with additional charges in the agency proceeding.

Binding precedent provides that there is no due process violation inherent in the FTC's dual role as investigator and adjudicator[24] and that the choice "between consenting to an order or incurring the burdens and expenses of a defense is inherent in the adversary process and is basically 'part of the social burden of living under government.'"[25]

The only case-specific bias Traffic Jam claims is that the FTC first brought its case in district court. However, Traffic Jam argued in the district court that the case should be dismissed because the FTC should have instead pursued an administrative proceeding. Traffic Jam accordingly advocated for a non-jury, administrative proceeding.[26]

Traffic Jam nevertheless asserts that the FTC's "win" record deprived it of due process but has not explained how the FTC's win record inherently indicates wrongdoing. Additionally, Traffic Jam's assertion rings

---

[24] *See Withrow v. Larkin*, 421 U.S. 35, 58 (1975) ("The initial charge or determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they relate to the same issues does not result in a procedural due process violation."); *Gibson v. FTC*, 682 F.2d 554, 560 (5th Cir. 1982) (applying *Withrow* in the FTC context).

[25] *Gibson*, 682 F.2d at 560 (quoting *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980)).

[26] *Cf. Brady v. United States*, 397 U.S. 742, 748 (1970) (explaining that a defendant may waive the right to a jury trial if the waiver is done voluntarily, knowingly, and intelligently).

particularly hollow when it advocated in district court that the FTC was the appropriate forum. We find no due process violation.

## C

We do not address Traffic Jam's Seventh Amendment claim because it was first raised in Traffic Jam's reply brief.

## IV

Next, we address whether the FTC had jurisdiction over Traffic Jam's acts and whether Traffic Jam's misrepresentations violated the FTC Act. "We review the FTC's legal analysis and conclusions de novo, 'although even in considering such issues the courts are to give some deference to the [FTC]'s informed judgment that a particular commercial practice is to be condemned as "[deceptive]."'"[27]

## A

We first address jurisdiction. Section 45(a)(2) empowers the FTC to prevent persons and corporations from "using *unfair methods* of competition in or affecting commerce and *unfair or deceptive acts* or practices in or affecting commerce."[28]

The FTC reasoned that it had jurisdiction under the FTC Act because it has jurisdiction over people and corporations "using unfair or deceptive acts or practices 'in or affecting commerce,'" as stated in § 45(a). It explained that Traffic Jam sends email blasts to car dealers across the country to promote its services, disseminates mailings to tens of thousands

---

[27] *N. Tex. Specialty Physicians v. FTC*, 528 F.3d 346, 354 (5th Cir. 2008) (first alteration in original) (italics omitted) (quoting *FTC v. Ind. Fed'n of Dentists*, 476 U.S. 447, 454 (1986)).

[28] 15 U.S.C. § 45(a) (emphasis added).

of customers in multiple states, and uses printers in multiple states to produce the mailings. The FTC Act initially stated "in commerce" and, after the Supreme Court interpreted that "as limited to interstate commerce and refused to read it expansively to mean 'affecting commerce,'" Congress then amended the Act to read "'unfair or deceptive acts or practices in *or affecting*' commerce."[29] Traffic Jam, as a company using out-of-state printers to send advertisements to consumers across the country, fits within this expanded definition.[30]

The parties dispute whether § 45(a) is limited by § 45(n). Section 45(n) states that

> [t]he Commission shall have no authority . . . to declare unlawful an act or practice on the grounds that such act or practice is *unfair* unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.[31]

Traffic Jam argues that substantial evidence does not support jurisdiction

---

[29] *Newby v. Enron Corp.* (*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*), 511 F. Supp. 2d 742, 780 (S.D. Tex. 2005) (discussing *FTC v. Bunte Bros.*, 312 U.S. 349, 350-51 (1941)).

[30] *See N. Tex. Specialty Physicians*, 528 F.3d at 355 ("The FTC reasoned that 'NTSP's actions to maintain physician fee levels, if successful, could be expected to affect the flow of interstate payments from out-of-state payors to NTSP physicians.' Payors also testified that they provide health-care coverage to national companies with employees in Texas, and that an increase in costs for health-care services in Fort Worth would affect the overall insurance costs of these national companies. If NTSP's efforts to maintain physicians' fees were successful, 'as a matter of practical economics,' the advantages of competition have been adversely affected for out-of-state employers and payors. The FTC had jurisdiction." (first quoting *N. Tex. Specialty Physicians*, 2005–2 Trade Cas. (CCH) ¶ 75,032, slip op. at 6 (F.T.C. 2005); and then quoting *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 331 (1991))).

[31] 15 U.S.C. § 45(n) (emphasis added).

under § 45(n) because the FTC made no showing of substantial injury. The FTC replies that § 45(n) is only for "unfair" practices, not "deceptive practices," and that this section therefore does not apply.

Unlike other portions of § 45, § 45(n) does not include the phrase "deceptive" and instead solely includes "unfair." "[W]here Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[32] Therefore, the plain text of the statute supports the view that "deceptive" can be differentiated from "unfair." In following the plain text, we also align with other circuits on this issue.[33]

Traffic Jam argues that this plain text reading of § 45(n) causes the FTC's authority to regulate deceptive acts to be untethered from any statutory limitation set forth by Congress and that it therefore violates the nondelegation doctrine.

"Congress may 'obtain[] the assistance of its coordinate Branches'— and in particular, may confer substantial discretion on executive agencies to

---

[32] *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (alterations in original) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

[33] *See FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 245-46 (3d Cir. 2015) (discussing the overlap between unfairness and deception claims); *FTC v. LoanPointe, LLC*, 525 F. App'x 696, 700 (10th Cir. 2013) ("Under the FTC Act, a practice is deceptive if it entails a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. A practice is unfair if it 'causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" (citation omitted) (first citing *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994); and then quoting 15 U.S.C. § 45(n))).

implement and enforce the laws."[34]  This "delegation is constitutional as long as Congress 'lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform.'"[35]  Acts of Congress have rarely been held to be unconstitutional based on the intelligible-principle standard.[36]  For example, in *National Broadcasting Co. v. United States*,[37] the Supreme Court upheld a delegation to regulate based on "public interest, convenience, or necessity."[38]  Similarly, in *Yakus v. United States*,[39] the Supreme Court upheld a delegation to set commodity prices that are "generally fair and equitable and will effectuate the purposes of this Act."[40]  In *Jarkesy*,[41] this court concluded that Congress had provided the SEC with "*no guidance whatsoever*" and therefore violated the nondelegation doctrine.[42]

---

[34] *Gundy v. United States*, 588 U.S. 128, 135 (2019) (alteration in original) (quoting *Mistretta v. United States*, 488 U.S. 361, 372 (1989)).

[35] *Id.* (alterations in original) (quoting *Mistretta*, 488 U.S. at 372).

[36] *See Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 443-44 (5th Cir. 2020) ("Recall that it is 'constitutionally sufficient if Congress [ (1) ] clearly delineates [its] general policy, [ (2) ] the public agency which is to apply it, and [ (3) ] the boundaries of th[at] delegated authority.'" (alterations in original) (quoting *Mistretta*, 488 U.S. at 372-73)); *id.* at 442 n.15 ("Some have suggested that the Court's intelligible-principle standard is really no hurdle at all."); *id.* at 442-43 ("[T]he Court has 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law.'" (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474-75 (2001))).

[37] 319 U.S. 190 (1943).

[38] *Id.* at 216.

[39] 321 U.S. 414 (1944).

[40] *Id.* at 420, 426.

[41] *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd on other grounds*, 603 U.S. 109 (2024).

[42] *Id.* at 462.

No. 21-60947

Unlike in *Jarkesy*, Congress has provided the FTC with an intelligible principle: the FTC is directed to regulate "deceptive" acts, which, under a plain meaning, must be likely to cause deception.[43]  Congress has placed a limit on the FTC, and this limit is sufficient under the nondelegation doctrine.

## B

We next address whether Traffic Jam's mailers violate the FTC Act.

Under the FTC's Policy Statement on Deception,[44] created in 1983, in deception cases (1) the FTC must show "a representation, omission or practice that is likely to mislead the consumer"; (2) this must be examined "from the perspective of a consumer acting reasonably in the circumstances"; and (3) "the representation, omission, or practice must be a 'material' one."[45]  The question of materiality, which is the prong at issue here, focuses on "whether the act or practice is likely to affect the consumer's conduct or decision with regard to a product or service."[46] "This court reviews the Commission's factual determinations under the substantial evidence standard."[47]

Traffic Jam argues that substantial evidence is lacking to support the materiality of its misrepresentations because no consumers were tricked into

---

[43] *Deceptive Act*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("As defined by the Federal Trade Commission and most state statutes, conduct that is likely to deceive a consumer acting reasonably under similar circumstances.").

[44] FED. TRADE COMM'N, FTC POLICY STATEMENT ON DECEPTION (Oct. 14, 1983), https://www.ftc.gov/public-statements/1983/10/ftc-policy-statement-deception.

[45] *Id.* at 1.

[46] *Id.*

[47] *Chi. Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 422 (5th Cir. 2008).

buying a car.  Traffic Jam cites to out-of-circuit cases stating that a statement is material when it affects a decision to purchase.  However, numerous consumer complaints support the FTC's contention that consumers visited dealerships as a result of the mailers when they would not have otherwise done so.  There is substantial evidence of materiality.

## V

Traffic Jam contends that it is not subject to the TILA.  Section 144 of the TILA [48] "applies to any advertisement to aid, promote, or assist directly or indirectly any consumer credit sale, loan, or other extension of credit subject to the provisions of this subchapter, other than an open end credit plan," with some exceptions not applicable to this case.[49]  The FTC concluded that Traffic Jam violated § 144 and its implementing regulation, § 1026.24 of Regulation Z,[50] which, as the FTC notes, "require[s] advertisements for closed-end credit to disclose certain terms when 'triggering terms' appear in the ad."

Traffic Jam argues that 15 U.S.C. § 1602(g) defines "creditor" as a person who both regularly extends credit and is the one to whom the debt arising from a consumer credit transaction is initially payable and that Regulation Z contains language limiting it to creditors.  Traffic Jam argues that it is not a creditor under these provisions and § 144 must also be limited to creditors because the TILA "was enacted to enhance economic stabilization and competition among financial institutions and other firms engaged in the extension of consumer credit through the informed use of

---

[48] 15 U.S.C. § 1664.

[49] *Id.* § 1664(a)-(b).

[50] 12 C.F.R. § 1026.24.

credit" and other sections of the TILA refer to creditors.

Although Traffic Jam is correct that § 1602(g) defines creditor and that some parts of the TILA are limited to creditors, § 144 applies by its plain text to all advertisers because the provisions discuss "*any advertisement.*"[51] Additionally, Regulation Z's definition of "advertisement" does not mention the status of the advertiser.[52]  The Federal Reserve's official interpretation of Regulation Z also makes this point explicitly.[53]  Traffic Jam is subject to § 144 of the TILA.

## VI

We next address whether Traffic Jam forfeited its argument that the prohibitions in the FTC's order were unconstitutional.  The FTC issued a cease-and-desist order which bars Traffic Jam Events and Jeansonne individually from (1) "participat[ing] in any business which involves, in whole or in part, advertising, marketing, promoting, distributing, offering for sale or lease, or selling or leasing motor vehicles"; (2) making misrepresentations about government financial assistance or any "prize, sweepstakes, lottery, or giveaway"; and (3) making statements about credit offers "without disclosing Clearly and Conspicuously" the terms required by the TILA and Regulation Z.  It also requires compliance monitoring, reporting, and recordkeeping.

The FTC's complaint included a "Notice of Contemplated Relief,"

---

[51] 15 U.S.C. § 1664(a) (emphasis added).

[52] 12 C.F.R. § 1026.2(a)(2).

[53] *Id.* § 226.2(a)(2) (Supp.) ("All *persons* must comply with the advertising provisions in §§ 226.16 and 226.24, not just those that meet the definition of creditor in § 226.2(a)(17).  Thus, home builders, merchants, and others who are not themselves creditors must comply with the advertising provisions of the regulation if they advertise consumer credit transactions.").

No. 21-60947

which included a prohibition on all advertising in the auto industry, and the FTC's complaint counsel submitted a proposed order that included the same provisions as the final order. Traffic Jam could have raised an objection in its answer or in its opposition to the motion for summary decision. However, Traffic Jam did not specifically object during the administrative proceedings.

As described above, in *Carr*, the Supreme Court examined whether a court should judicially impose an issue-exhaustion requirement if none exists in the agency's statutes or regulations,[54] considering (1) whether the agency proceedings were adversarial or inquisitorial, in particular "whether claimants bear the responsibility to develop issues for adjudicators' consideration";[55] (2) "that agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise";[56] and (3) that "this Court has consistently recognized a futility exception to exhaustion requirements."[57] While the FTC may be "ill suited to address structural constitutional challenges,"[58] the agency has expertise in determining how narrow of an order could still accomplish the goal of preventing deceptive advertising going forward. Because the agency could have considered whether to revise its order if Traffic Jam had raised this argument below, raising it below would not have been futile.

Additionally, "orderly procedure and good administration require

_____

[54] *Carr v. Saul*, 593 U.S. 83, 88 (2021).

[55] *Id.* at 89.

[56] *Id.* at 92.

[57] *Id.* at 93.

[58] *Id.* at 92.

that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."[59] Further, "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."[60]

Because Traffic Jam failed to challenge the prohibitions in the FTC's order during the administrative proceeding, it has forfeited this claim. We therefore do not address the merits.

## VII

Traffic Jam argues that substantial evidence does not support personal responsibility for Jeansonne because there is no evidence that he knowingly violated any FTC order or intentionally flouted the Act. "This court reviews the Commission's factual determinations under the substantial evidence standard"[61] and its legal conclusions de novo.[62]

As the Eleventh Circuit has explained, "[i]ndividuals may be liable for FTC Act violations committed by a corporate entity if the individual 'participated directly in the [deceptive] practices or acts or had authority to control them'" and if the FTC can "establish that 'the individual had some

---

[59] *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

[60] *Id.*

[61] *Chi. Bridge & Iron Co. N.V. v. FTC*, 534 F.3d 410, 422 (5th Cir. 2008).

[62] *See N. Tex. Specialty Physicians v. FTC*, 528 F.3d 346, 354 (5th Cir. 2008).

knowledge of the [deceptive] practices.'"[63] In *Cotherman v. FTC*,[64] this court declined to dismiss an order against individual respondents even though they did not have a present intention of reentering the business at a future date because "the respondents, in a calculated fashion, misled and deceived the unknowledgeable and unsophisticated[,] . . . continued these practices until after the Commission had open its investigation against them[,] [and] have in the past been associated with the lending business in other connections."[65] Similarly, *Doyle v. FTC*[66] notes that an officer can be named as an individual in an FTC order when there is "something in the record suggesting that he would be likely to engage in these practices in the future as an individual."[67]

Jeansonne was the president of Traffic Jam, oversaw all departments, had day-to-day control over corporate affairs, was personally involved in the at-issue mailings, and participated in the mailers' design, stating that the COVID mailers should not be watered down. Moreover, Traffic Jam has settled charges brought by multiple states in relation to its mailers, and

---

[63] *FTC v. IAB Mktg. Assocs.*, 746 F.3d 1228, 1233 (11th Cir. 2014) (alterations in original) (quoting *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989), *overruled by, FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019)); *see also FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1204 (10th Cir. 2005) ("To justify the imposition of injunctive relief against the individual, the FTC is required to show the individual participated directly in the business entity's deceptive acts or practices, or had the authority to control such acts or practices. A showing of participation or control justifies injunctive relief against an individual if in the public interest, notwithstanding the fact business operations and/or deceptive acts and practices may have ceased." (emphasis omitted) (citation omitted)).

[64] 417 F.2d 587 (5th Cir. 1969).

[65] *Id.* at 595.

[66] 356 F.2d 381 (5th Cir. 1966).

[67] *Id.* at 383 n.5 (quoting *The Lovable Co.*, 67 F.T.C. 1326 (1965)).

No. 21-60947

Jeansonne has admitted his involvement in those settlements. Jeansonne's knowledge of these lawsuits shows he was aware that some would view his advertisements as deceptive.

Although Traffic Jam argues that there is no evidence that Jeansonne knowingly violated any FTC order or intentionally flouted the Act, this court has never required such a showing. It is sufficient that Jeansonne participated in and had the authority to control the practices found to be deceptive[68] and knew that multiple states viewed his prior actions as deceptive. He can therefore be held personally liable.

*    *    *

The petition for review is DENIED.

---

[68] *See Freecom Commc'ns*, 401 F.3d at 1204.